UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HEATHER H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

20-CV-1521-LJV
DECISION & ORDER

---

On October 20, 2020, the plaintiff, Heather H. ("Heather"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On September 14, 2021, Heather moved for judgment on the pleadings, Docket Item 13; on February 11, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on March 25, 2022, Heather replied, Docket Item 17.

For the reasons stated below, this Court denies Heather's motion and grants the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Heather argues that the ALJ erred in discounting the opinions of Peter E. Shields, M.D., Heather's treating physician and orthopedic surgeon, while affording the opinion of Hongbiao Liu, M.D., a consultative examiner, significant weight. Docket Item

13-1 at 11.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

When determining a claimant's residual functional capacity ("RFC"),[3] an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairment[s]."  See 20 C.F.R. § 416.927(c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 416.927(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (alterations and internal quotation marks omitted).  These are the so-called "Burgess

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945(a)(1), "in an ordinary work setting on a regular and continuing basis," see Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

3

factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (citing *Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013) (per curiam)).

The ALJ in this case considered two opinions from Heather's treating orthopedic surgeon, Dr. Shields. First, the ALJ considered Dr. Shields's November 2013 opinion that Heather was "disabled." Docket Item 11 at 246-47, 456. The ALJ afforded this opinion "some weight" because, while it had some probative value for the period between Heather's two hip surgeries, it was conclusory.[4] *Id.* at 456. Second, the ALJ considered a March 2016 joint opinion from Dr. Shields and D. Dudziak,[5] PA-C—more specifically, a physical RFC questionnaire—which described Heather's prognosis as "poor" due to bilateral avascular necrosis of her hips. *Id.* at 436-40, 456-57. The joint opinion found that Heather could walk less than one city block without rest or severe

---

[4] Heather argues primarily about Dr. Shields's 2016 opinion and does not focus on Dr. Shields's November 2013 opinion. *See* Docket Item 13-1 at 11-18. But to the extent that she argues that the ALJ erred in weighing the 2013 opinion, this Court disagrees. The 2013 opinion found that Heather was "disabled," and opinions on the ultimate issue of disability—an issue reserved for determination by the Commissioner—are not even considered medical opinions. *See Michael E. v. Comm'r of Soc. Sec.*, 2021 WL 1087928, at *4 (W.D.N.Y. Mar. 22, 2021); *see also Greek*, 802 F.3d at 376 ("[A treating physician's] conclusion of disability was itself not entitled to any weight because only the Commissioner can make the final determination of disability under the Social Security Act."). Nevertheless, the ALJ still must analyze what is behind the treating physician's opinion of disability, *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (The fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the Commissioner . . . means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." (internal quotation marks omitted)), and the ALJ did exactly that here. *See* Docket Item 11 at 453, 456.

[5] PA-C Dudziak's first name is not included in the record, but his first initial is.

pain; could sit for only thirty minutes at a time; could stand for only fifteen minutes at a time; and could sit, stand, and walk for less than two hours in an eight-hour workday. *Id.* at 437-38.  Dr. Shields and PA-C Dudziak also concluded that Heather could not sit for a prolonged period, could rarely climb stairs, could never crouch or climb ladders, and is likely to experience "good days" and "bad days" due to her impairments.  *Id.* at 438-39.  The ALJ assigned only "some weight" to the joint opinion because it was inconsistent with Heather's activities of daily living, Dr. Shields's "own reports," and Dr. Liu's more recent consultative opinion.[6]  *See id.* at 456-57.

In assigning the joint opinion some weight, the ALJ explicitly addressed all four *Burgess* factors.  For example, the ALJ noted that Dr. Shields was Heather's "hip surgeon" and "specialist from 2012 to October 2015," that he had a "relatively frequent[] treatment relationship" with her, and that he had performed two surgeries on Heather. *Id.* at 456.  The ALJ also noted that Heather stopped seeing Dr. Shields in October 2015. *Id.* at 452.  He explained that although Heather testified at her hearing that "she stopped going to Excelsior"—Dr. Shields's group—"because there was nothing else they could do for her," Dr. Shields's treatment notes show that further treatment options were discussed with Heather.  *Id.*  The ALJ thus explicitly addressed the "frequency, length, nature, and extent of treatment" and whether Dr. Shields is a specialist.  *See Greek*, 802 F.3d at 375.

The ALJ also explicitly considered the "amount of medical evidence supporting the opinion" and the "consistency of the opinion with the remaining medical evidence."

---

[6] The ALJ correctly noted that PA-C Dudziak is not an acceptable medical source but still considered the joint opinion as the opinion of a treating source because Dr. Shields co-authored it.  *See* Docket Item 11 at 456.

5

*See id.* For example, the ALJ noted that the joint opinion was not "internally consistent [with Dr. Shields's] own reports, which typically revealed few findings other than tenderness to palpation over the trochanteric bursal area and pain free passive range of motion." Docket Item 11 at 457. Moreover, the ALJ noted that the joint opinion was inconsistent with Heather's "wide-range of activities of daily living acknowledged at the hearing and noted in the records," *id.*, including doing laundry in the basement once or twice a week, *id.* at 450; caring for her eleven-year-old son and multiple pets, *id.* at 451; preparing full meals daily; *id.* at 452, performing light housework for short periods, *id.*; and shopping for groceries, *id.* at 451-52. Likewise, the ALJ found that the joint opinion was not supported by Heather's course of treatment—specifically her decision to stop seeking specialized treatment in late 2015. *Id.* at 457. So the ALJ explained in some detail why the lack of evidence supporting the opinion and the opinion's inconsistency with other evidence resulted in the weight he assigned.

The ALJ also noted that the joint opinion was inconsistent with the consultative opinion of Dr. Liu, "who [had] conducted a thorough review more recently." *Id.*[7] For example, the ALJ noted that while the joint opinion indicated that Heather could sit for

---

[7] In his November 2019 consultative opinion, Dr. Liu identified Heather's prognosis as "stable" and concluded that Heather had "mild to moderate limitation[s] for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing." Docket Item 11 at 749. Specifically, Dr. Liu noted that Heather could lift and carry up to ten pounds continuously, up to twenty pounds frequently, up to fifty pounds occasionally, but never more than fifty pounds. *Id.* at 751. He indicated that Heather could sit and stand for one hour at a time and two hours total over an eight-hour day, and that she could walk for two hours at a time and four hours total. *Id.* at 752. Dr. Liu also noted that Heather could occasionally climb stairs and ramps but never climb ladders or scaffolds, could frequently kneel, and could occasionally crouch and crawl. *Id.* at 754. He further indicated that Heather could frequently reach, push, and pull. *Id.* at 753.

only thirty minutes at a time and stand for only fifteen minutes at a time, *id.* at 456, Dr. Liu's opinion—rendered years later—found that Heather now could sit and stand for up to one hour at a time, *id.* at 458.  Similarly, the ALJ noted that while the joint opinion said that Heather "could rarely lift less than [ten] pounds and never any heavier weight," *id.* at 456, Dr. Liu more recently opined that Heather could occasionally lift up to fifty pounds, frequently lift up to twenty pounds, and continuously lift up to ten pounds, *id.* at 458.

The ALJ thus explicitly considered all four *Burgess* factors before assigning only some weight to the joint opinion.  But even if the ALJ had not explicitly addressed the *Burgess* factors, this Court still would not revisit the ALJ's determination, because the ALJ so carefully reviewed all the medical evidence and opinions in the record.  For example, in formulating Heather's RFC, the ALJ gave "significant weight" to most of Dr. Liu's opinion, *id.*, and gave "some weight" to the opinions of Dr. Shields, *id.* at 455-57, as well as to the opinions of two other healthcare providers, *id.* at 455, 457-58.[8]  The

---

[8] In formulating Heather's RFC, the ALJ gave "some weight" to the opinions of Christopher Beney, M.D., and Samuel Balderman, M.D., Docket Item 11 at 455, 457-58, and "little weight" to the opinion of Michael Ostolski, N.P., *id.* at 458, 770-72.  In his September 2013 opinion, Dr. Beney wrote that Heather was "unable to wear [an] ankle bracelet due to significant leg edema and cannot do community service" until September 19, 2013.  *Id.* at 241.  The ALJ afforded this opinion "some weight" because, although Dr. Beney had a previous treatment relationship with Heather as her primary care physician, he was not a specialist.  *Id.* at 455.  The ALJ also explained that Dr. Beney's opinion was inconsistent with Heather's reported activities of daily living, Dr. Beney's own treatment notes, and the findings of other healthcare providers "that revealed mostly normal gait, normal strength, lack of edema, and no need for an assistive device."  *Id.* at 455-56.  The ALJ further noted that the opinion was "clearly intended to be temporary in nature" and was conclusory.  *Id.* at 455.  Dr. Balderman's January 2014 opinion indicated that Heather had a "marked limitation [in] kneeling, climbing, and prolonged walking due to right hip pain" and that she could be reevaluated six months after her right total hip replacement.  *Id.* at 271.  The ALJ gave this opinion only "some weight" because it was rendered before Heather's second hip replacement

ALJ explained in detail why he afforded those weights to the various opinions, and he cited medical evidence in support of his conclusions. *Id.* at 455-58. So even if the ALJ had erred in not explicitly addressing each of the *Burgess* factors, this Court would have been satisfied that "the substance of the treating physician rule was not traversed" and still would have affirmed. *See Estrella*, 925 F.3d at 95-96 (citing *Halloran v. Barnhart*, 362 F.3d 38, 33 (2d Cir. 2004)) (if substance of treating physician rule is met, ALJ's decision must be affirmed even if ALJ did not "explicitly" consider each *Burgess* factor); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead only to the same conclusion" (alterations omitted)).

The ALJ also incorporated the limitations in the various opinions into Heather's RFC. For example, the ALJ limited Heather to sitting for one hour continuously and for two hours total, *id.* at 449, a limitation consistent with the opinion of Dr. Liu, *see id.* at 752 (Dr. Liu's opinion that Heather can sit for one hour continuously and two hours total). The ALJ found that Heather can "frequently reach, push, and pull," *id.* at 449, which is consistent with Dr. Shields's and PA-C Dudziak's opinion that Heather does not "have significant limitations with reaching, handling or fingering," *id.* at 439.

---

and was inconsistent with more recent record evidence, including "relatively benign examination findings," Heather's activities of daily living, and Dr. Liu's consultative opinion. *Id.* at 457-58. Nurse practitioner Ostolski's October 2019 opinion found that Heather was "unable to work what[soever]." *Id.* at 770. The ALJ afforded this opinion "little weight" because it was unclear whether it was Heather's own statement or a medical opinion, because it was conclusory, because it was not rendered by an acceptable medical source, and because it was inconsistent with Heather's activities of daily living. *Id.* at 458.

Indeed, the RFC is either consistent with or more restrictive than the opinion of Dr. Liu, the physician who examined Heather most recently, in all respects.[9]  For example, the ALJ adopted Dr. Liu's opinion that Heather could lift and carry up to ten pounds continuously, twenty pounds frequently, and up to fifty pounds occasionally.  *See id.* at 449 (RFC limiting Heather to lifting and carrying "up to [fifty] pounds occasionally, [twenty] pounds frequently, and less than [ten] pounds continuously"), 751 (same in Dr. Liu's opinion).  The ALJ also found that Heather occasionally can climb stairs and ramps but never can climb ladders, ropes, or scaffolds, *id.* at 450, consistent with Dr. Liu's opinion about Heather's ability to perform these activities, *see id.* at 754.

And to the extent that the ALJ favored the opinion of a consultant over the opinion of a treating physician, that was not error under the unusual circumstances here.  To be sure, the Second Circuit has cautioned against "rely[ing] heavily on the findings of consultative physicians after a single examination." *See, e.g.*, *Selian*, 708 F.3d at 419.  But here, Heather had not seen her treating physician—or any other specialist for that matter—since October 2015.  Docket Item 11 at 452.  Without any records from Heather's treating physician for nearly five years, the ALJ reasonably looked to the consultative examiner who had performed a more recent examination and rendered a more recent opinion.  There was nothing wrong with that.  *See Merrit v. Colvin*, 142 F. Supp. 3d 266, 273 (N.D.N.Y. 2015) (ALJ did not err in assigning less-

---

[9] The RFC was even more restrictive than Dr. Liu suggested.  For example, while the RFC limited Heather to kneeling only occasionally, Docket Item 11 at 450, Dr. Liu opined that Heather could kneel frequently, *id.* at 754.  And while the RFC limited Heather to stooping only occasionally, *id.* at 450, Dr. Liu opined that Heather could stoop continuously, *id.* at 754. The RFC also said that Heather cannot work at unprotected heights, *id.* at 450, which is more restrictive than Dr. Liu's opinion that Heather can work continuously at unprotected heights, *id.* at 755.

than-controlling weight to treating physician's opinion when treating physician had not seen claimant for three years); *Hamblin v. Apfel*, 7 F. App'x 449, 450-51 (6th Cir. 2001) (more recent opinion by another physician discounted treating physician's "outdated" opinion rendered approximately five years before).

Unless an ALJ can never discount a treating physician's opinion in favor of a consultant's, the ALJ did not err here. *See generally Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of non[-]examining sources to override treating sources' opinions provided they are supported by evidence in the record."); *see also Georgina W. v. Comm'r of Soc. Sec.*, 2021 WL 2809553, at *10 (W.D.N.Y. July 6, 2021) (citing *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018)) ("[I]t is also generally accepted that a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence"). Especially when a claimant has not seen her specialist treating physician for several years—and when the opinion of that physician therefore may well be outdated—the ALJ acts within his discretion in relying on the more recent, well-supported opinion of a consultant. In fact, that is exactly what the ALJ should do.[10] *See Hamblin*, 7 F. App'x at 451-52.

Finally, even if this Court disagreed with the ALJ's conclusion, it still would be compelled to "defer to the Commissioner's resolution of conflicting evidence" because a

---

[10] This case has been remanded by this Court with instructions that the ALJ should obtain complete records from a treating source and explicitly apply the treating physician rule. *See* Docket Item 11 at 444. On remand, the Appeals Council instructed the ALJ, *inter alia*, to offer the claimant a new hearing. *Id.* at 444-45. As the ALJ noted in his decision on remand, *see id.* at 445, he carefully followed those instructions, *see id.* at 455-57.

court can reject an ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (summary order); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("[The plaintiff]'s disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents [the court] from reweighing it."). In other words, if substantial evidence in the record supports the ALJ's determination, the Court must affirm that conclusion. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (summary order) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). And that is the case here.

In sum, the ALJ properly applied the *Burgess* factors and articulated his reasoning in affording Dr. Shields's opinions only "some weight," and he appropriately formulated Heather's RFC in light of all the evidence in the record, *see* 20 C.F.R. § 416.927(c). For that reason, the ALJ's decision was neither contrary to the substantial evidence in the record nor the result of any legal error. And although this Court has sympathy for Heather and the hardships that must stem from her impairments, this Court cannot and will not disturb the ALJ's considered judgment.

## **CONCLUSION**

For the reasons stated above, Heather's motion for judgment on the pleadings, Docket Item 13, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 16, is GRANTED. The complaint is DISMISSED, and the Clerk of the Court shall close the file.

SO ORDERED.

Dated:      July 29, 2022
               Buffalo, New York

                                                  ***/s/ Lawrence J. Vilardo***
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE